# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| VICKIE M. HARTZER, | ) | CASE NO. 3:23-CV-01972-JRK |
| Plaintiff, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| v. | ) | JAMES R. KNEPP, II |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | U.S. MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I. INTRODUCTION

Plaintiff, Vickie M. Hartzer ("Ms. Hartzer"), seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1.) This matter is before me pursuant to 42 U.S.C. §§ 405(g) and Local Rule 72.2(b). (ECF non-document entry dated July 25, 2023.) For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

## II. PROCEDURAL HISTORY

On July 19, 2019, Ms. Hartzer applied for DIB and SSI, alleging a disability onset date of June 1, 2019. (Tr. 171, 340.) Her application related to, in relevant part, attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, and bipolar disorder. (Tr. 340, 347, 403.) Her application was denied initially and upon reconsideration. (Tr. 136-37, 166-67.) An administrative law judge ("ALJ") held an administrative hearing on March 15, 2022, which later resulted in the ALJ issuing an unfavorable decision. (Tr. 171.) The Appeals Council granted Ms.

Hurst's request for review and remanded the case to the ALJ to give further consideration to the prior administrative medical findings. (Tr. 189.)

On October 3, 2022, another ALJ held an administrative hearing where Ms. Hartzer, represented by counsel, and a vocational expert ("VE") testified. (Tr. 42-68.) The ALJ issued a decision on November 15, 2022, finding Ms. Hartzer was not disabled within the meaning of the Social Security Act. (Tr. 19-34.) The ALJ's decision became final on August 11, 2023, when the Appeals Council declined further review. (Tr. 3.) Ms. Hartzer filed a Complaint on October 10, 2023. (ECF No. 1.) She raises the following assignment of error:

> (1) The ALJ failed to account for a specific limitation opined by the state agency's own reviewing mental health expert, and that omitted limitation could have altered the entire outcome of the claim.

(ECF No. 6, PageID#1354.)

### III. BACKGROUND[1]

#### A. **Personal, Educational, and Vocational Information**

Ms. Hartzer was born in 1976. (Tr. 77, 347.) She has a wife and two children. (Tr. 78.) She has a GED, and she did not attend college or receive any vocational training. (Tr. 79.) Her past relevant work was employment as a cook and delivery driver. (Tr. 32.)

#### B. **Relevant Non-Medical/Medical Opinion Evidence**

In September 2019, Lisa Foulk, PsyD, reviewed the record at the initial level of consideration. Dr. Foulk opined that Ms. Hartzer is able to complete 1- to 3-step tasks that do not require a sustained pace; can adapt to an environment with infrequent change; and has no social limitations. (Tr. 119-20.) Robert Baker, Ph.D., reviewed the record at the reconsideration level in November 2019. Dr. Baker opined that Ms. Hartzer is able to understand and remember 1- to 3-

---

[1] Because Ms. Hartzer's assignment of error pertains to her mental impairments, this Report and Recommendation's summary will only discuss evidence related to these impairments.

step instructions; able to concentrate sufficiently for the completion of 1- to 3-step tasks; able to work in a setting with occasional, superficial interactions with others; and will need occasional flexibility with breaks when experiencing increased symptoms. (Tr. 147-48.)

### C. Relevant Medical Evidence

Ms. Hartzer received mental health treatment in the form of psychotherapy and medication management during the relevant period. Bipin Desai, M.D., Ms. Hartzer's psychiatrist, diagnosed her in February 2018 with bipolar II disorder, anxiety disorder, and ADHD, for which he prescribed medications, including Klonopin, Latuda, Adderall, and Zoloft. (Tr. 715.) Her mental status examination revealed fair mood and affect, intact associations, logical thinking, appropriate thought content, and fair insight and judgment. (Tr. 714.)

On May 7, 2018, Ms. Hartzer returned for a follow-up appointment with Dr. Desai, where Dr. Desai noted that she was compliant with her medication. (Tr. 700.) Her mental status examination revealed euthymic mood with no signs of depression or elevation, generally appropriate behavior, intact associations, generally logical thinking, appropriate thought content, no present signs of anxiety, and normal insight and judgment. (*Id.*)

On November 29, 2018, Ms. Hartzer described herself as irritable, inattentive, and disorganized. (Tr. 702.) She admitted to "veg" symptoms. (*Id.*) She reported she "need[ed] to be back on [her] meds." (*Id.*) Dr. Desai noted that Ms. Hartzer appeared to be anxious. (*Id.*) Ms. Hartzer's mental status examination revealed depressed and irritable mood, intact associations, logical thinking, appropriate thought content, no suicidal ideas or intent, and fair insight and judgment. (*Id.*)

At an October 28, 2019, appointment with Dr. Desai, Ms. Hartzer reported that she was depressed and admitted again to "veg" symptoms. (Tr. 919.) Dr. Desai spoke with Ms. Hartzer

3

about decreasing her Klonopoin dosage, but Ms. Hartzer was reluctant to do so. (*Id.*) Her mental status examination revealed moderate signs of depression, sad demeanor, depressed thought content, intact associations, logical thinking, appropriate thought content, and fair insight and judgment. (Tr. 920.)

On December 9, 2019, Ms. Hartzer reported that she was "feeling good" mentally. (Tr. 922.) She described herself as attentive, productive, and working. (*Id.*) Her mental status examination revealed fair mood and affect, intact associations, logical thinking, appropriate thought content, no suicidal/homicidal ideation, and fair insight and judgment. (Tr. 922-23.)

Ms. Hartzer's therapist, Victoria Endicott, LISW, began seeing Ms. Hartzer in June 2020. (Tr. 1021.) Ms. Hartzer reported at her initial intake on June 18, 2020, that she was mentally exhausted and never left the house. (Tr. 1021.) However, apart from some depression, Ms. Hartzer's mental status examination was normal. (Tr. 1023.)

On July 20, 2020, Ms. Hartzer reported feeling better except for a poor attention span. (Tr. 940.) Her mental status examination revealed fair mood and affect, intact associations, logical thinking, appropriate thought content, no suicidal/homicidal ideation, and fair insight and judgment. (Tr. 941.)

On August 7, 2020, Ms. Hartzer reported that she felt better and had not had any angry outbursts since she began an increased dose of Abilify. (Tr. 1014.) Ms. Endicott noted that Ms. Hartzer's mood was improved, and her mental status examination was otherwise normal. (Tr. 1015.) Ms. Hartzer reported at her September 15, 2020, counseling appointment that her anxiety and depression had improved, and she was doing "alright." (Tr. 1007-08). On October 12, 2020, Ms. Hartzer reported feeling good and having an improved attention span. (Tr. 943.) Her mental

4

status examination revealed fair mood and affect, intact association, appropriate thought content, no suicidal/homicidal ideation, and fair insight and judgment. (Tr. 944.)

Ms. Hartzer reported on October 29, 2020, that she was irritable and anxious, but she was trying to distract herself from her "mostly unvented anger" by doing craft and refurbishing projects, as well working out on her elliptical machine as often as she could. (Tr. 1004.) She reported on December 1, 2020, that she was feeling "[o]verall not too bad," but said she could not do crafts in her garage because it was too cold. (Tr. 1000.) She felt more emotionally stable on Abilify and Strattera, but she still avoided crowds due to fear of an angry outburst. (*Id.*) She agreed to practice what she had learned in cognitive behavior therapy in her daily life. (Tr. 1002.)

At a February 23, 2021, counseling appointment, Ms. Endicott noted minimal progress. (Tr. 1279.) Ms. Hartzer reported that she had been struggling more and was trying to gain custody of her granddaughter. (*Id.*) On March 31, 2021, Ms. Hartzer told Ms. Endicott that she was working on crafts and refinishing furniture pieces. (Tr. 1282.) Dr. Desai had recently adjusted her medications, and Ms. Hartzer said that she knew they were helping because she was functioning better. (*Id.*) However, she still struggled with anxiety and agitation around other people. (*Id.*) On July 13, 2021, Ms. Hartzer reported that "[t]hings [we]re okay." (Tr. 1294.) Her moods were "a little snappy, but not terrible." (*Id.*) She reported feeling a lot of guilt and sadness related to being unable to obtain visitation with her granddaughter. (*Id.*)

On September 7, 2021, Ms. Hartzer reported to Dr. Desai that she was depressed. (Tr. 1150.) Her wife's mother was under hospice care, and she had to put her dog down due to cancer. (*Id.*) Dr. Desai observed that Ms. Hartzer demonstrated moderate signs of depression, sad demeanor, depressed thought content, depressed facial expression, body posture, attitude, and

5

general demeanor, but intact associations, logical thinking, appropriate thought content, no suicidal/homicidal ideations, and fair insight and judgment. (Tr. 1151.)

On November 29, 2021, Ms. Hartzer reported feeling better, having a fair attention span, and coping with her "multiple losses." (Tr. 1153.) She denied symptoms of anxiety, depression, or mania. (*Id.*) Her mental status examination revealed improved mood and affect, intact associations, logical thinking, appropriate thought content, no suicidal/homicidal ideation, and fair insight and judgment. (Tr. 1153-54.)

On March 23, 2022, Ms. Hartzer told Dr. Desai that she stopped taking Abilify and Strattera because they made her tired, but she said she was "feeling pretty good" and her attention span was fair. (Tr. 1156.) On June 15, 2022, Ms. Hartzer again reported that she felt "pretty good" with a fair attention span and no depression, anxiety, or mania. (Tr. 1159.)

### D. Relevant Hearing Testimony

#### 1. *Ms. Hartzer's Testimony*

Ms. Hartzer testified that her mental health impairments make it difficult for her to adapt to dramatic change. (Tr. 84-85.) She stated that dramatic change results in anxiety make her nervous around people, shaky, and she experiences dry mouth. (Tr. 85.) She reported that this anxiety gets to the point of panic attacks when she is around three or four people. (*Id.*) Because of her anxiety around people, she does her shopping primarily online. (*Id.*) She described herself as irritable and moody. (Tr. 85-86.) She reported experiencing crying spells and outbursts of anger "[a]ll the time." (Tr. 86.) She testified she has "rough days" where she does not want to get out of bed, talk to anyone, or do anything. (*Id.*) She stated that her mental health interferes with her ability to focus or concentrate on things every day. (Tr. 86-87.) She described her mood as "all over the place." (Tr. 87.) Her mood "really depends on the weather." (*Id.*) She has been seeing mental

6

health professionals for over 20 years and has found them to be helpful. (*Id.*) She takes medication for her mental health conditions and also finds them helpful. (*Id.*) She described her sleep as "so-so" and testified that she was working with a counselor to improve her sleep. (Tr. 88.) She is able to manage her hygiene and do basic chores around the house, such as cooking, cleaning, laundry, and dishes, but she does so with pain due to her physical health conditions. (*Id.*)

### 2. *Vocational Expert's Testimony*

The VE testified that Ms. Hartzer's past relevant work was employment as an outside deliverer, cook, and lawn mower. (Tr. 100.) The ALJ first asked the VE whether an individual with Ms. Hartzer's age, education, and work experience could perform work at the light exertional level if limited to frequent reaching overhead bilaterally; frequent handling and fingering bilaterally; occasional climbing of ramps or stairs; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; no exposure to unprotected heights, hazardous machinery, or commercial driving; performance of simple routine tasks and simple work-related decisions; and occasional interactions with supervisors, coworkers, or the general public. (Tr. 100-01.) The ALJ added that this individual could tolerate a few changes in a routine work setting. (Tr. 101.) The VE opined that the individual could not perform Ms. Hartzer's past relevant work but could perform work as a housekeeper, cafeteria attendant, and mail clerk. (*Id.*)

The ALJ then asked the VE whether an individual with the same limitations from the first hypothetical except limited to occasional reaching overhead and occasional handling and fingering bilaterally could perform work. (Tr. 102.) The VE opined that no jobs would be available. (*Id.*) The ALJ asked the VE whether an individual with the same limitations from the first hypothetical except limited to work at the sedentary exertional level could perform work. (*Id.*) The VE opined

7

that this individual could perform work as a document preparer, bench assembler, and finisher. (*Id.*) The ALJ also asked whether an individual with the same limitations from the first hypothetical except would be off task 20 percent of the time and absent three times per month could perform work. (Tr. 103.) The VE opined that no work would be available. (*Id.*)

The ALJ asked the VE about an employer's general tolerance for an employee's time off task and absenteeism. (*Id.*) The VE opined that an individual could be off task no more than 10 percent of the time and absent no more than once a month to sustain competitive employment. (*Id.*)

Ms. Hartzer's counsel asked the VE what the typical break schedule in unskilled work would be. (Tr. 104.) The VE testified that the customary breaks are 15 minutes in the morning, 30 minutes to an hour for lunch, and another 15 minutes in the afternoon. (*Id.*) The VE further testified that an employer or supervisor typically sets the breaks more than the employee does. (*Id.*) Ms. Hartzer's counsel then asked whether an individual could perform work if she required occasional (*i.e.*, a third of the time) flexibility with breaks. (*Id.*) The VE testified that this was a "[d]ifficult question to answer" and that he would say that this limitation would erode some of the numbers noted for the opined jobs. (*Id.*) The VE, however, stated that he did not think this limitation would be work preclusive. (*Id.*)

## IV. THE ALJ DECISION

The ALJ first found that Ms. Hartzer meets the insured status requirements of the Social Security Act through December 31, 2024. (Tr. 22.) The ALJ then found Ms. Hartzer has not engaged in substantial gainful activity since June 1, 2019, the alleged disability onset date. (Tr. 22.) The ALJ further found that Ms. Hartzer has the following severe impairments, in relevant part: ADHD, anxiety disorder, major depressive disorder, and bipolar disorder. (Tr. 23.) However,

the ALJ found that none of Ms. Hartzer's impairments—either individually or in combination—met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 23-25.)

The ALJ determined that Ms. Harzter retained the residual functional capacity ("RFC") to perform work at the sedentary exertional level except:

> no climbing ladders, ropes, and scaffolds, no working at unprotected heights or around hazardous machinery, and no commercial driving; no crawling; occasional climbing or ramps and stairs, balancing, stooping, crouching and kneeling; occasional bilateral overhead reaching; frequent bilateral handing and fingering; simple routine work with occasional interaction with co-workers and supervisors and no tandem tasks; no work with the general public as part of routine job duties; work is of a variable rate meaning no fast-paced assembly line type work or work where the machine sets the pace; only occasional decision-making and only occasional changes in the work setting; and end of day work goals versus strict hourly production requirements.

(Tr. 25.)

The ALJ then determined that Ms. Hartzer is unable to perform any of her past relevant work. (Tr. 32.) The ALJ determined that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ms. Hartzer is not disabled within the meaning of the Social Security Act. (Tr. 32.) The ALJ found that, considering Ms. Hartzer's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Ms. Hartzer can perform, including employment as a sorter, sealer, and inspector. (Tr. 32-33.) Accordingly, the ALJ concluded that Ms. Hartzer has not been under a disability as defined in the Social Security Act from June 1, 2019, through the date of the ALJ's decision. (Tr. 33.)

## V.    LAW AND ANALYSIS

### A. Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the

10

SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

B. **Standard for Disability**

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Sbpt. P, App. 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

### C. **The ALJ properly evaluated Dr. Baker's medical opinion.**

Ms. Hartzer argues that the ALJ erred in evaluating the opinion of Dr. Baker. Specifically, she contends that the ALJ failed to adequately explain her findings regarding the supportability, consistency, and persuasiveness of Dr. Baker's opinion that Ms. Hartzer needed occasional flexibility in breaks when experiencing increased mental health symptoms. (ECF No. 6, PageID#1362-65.) The Commissioner disagrees. (ECF No. 8, PageID#1375-79.) For the following reasons, Ms. Hartzer's argument is not well-taken.

At Step Four of the sequential evaluation, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how she considered the medical opinions ad prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how he considered the supportability of a source's medical opinion, but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). According to the regulation, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. *See* 20 C.F.R. § 404.1520(c)(1)-(2).

In relevant part, the ALJ assessed Dr. Hartzer's opinion as follows:

> The State agency psychological consultant on reconsideration opined that the claimant is able to concentrate sufficiently for the completion of 1-3 step tasks, is able to work in a setting with occasional, superficial interactions with others, and will need occasional flexibility with breaks when experiencing increased symptoms. The setting must be free of major of frequent changes to her work routine. On initial consideration, the claimant was to avoid work requiring a sustained fast pace (1A), not included on reconsideration, and found no social limitations, compared to the reconsideration where she was limited to occasional

> and superficial interaction with others and occasional flexibility in breaks when experiencing increased symptoms. Both mental work-related assessments are quite remote with the reconsideration assessment dated November 23, 2019. There is significant evidence since the date of these assessments with only a handful of exhibits considered at that time as compared to twenty-seven Section F exhibits. Regardless, while the record evidence supports some assessment of limitation, the record did not document listing level mental restriction.
>
> Rather, mental health treatment records document improvement of claimant's mental health symptoms with treatment as well as greater activities of living. She reported issues getting along with others, but there [are] also notations of her being personable with all providers and reports going to the casino, and thus, in the proximity of others. As noted above, the claimant described improvement in mood with weight loss and participating in a considerable amount of activities of daily living. On evaluation, sources described the claimant as having improving mental status exam findings and movement in the right direction with process documented (14F).
>
> The overall record did not provide support for the state agency assessment that she required flexibility in breaks when experiencing increased symptoms as suggested by the reconsideration assessment and not included at the initial level. In taking this under consideration, however, the claimant has been provided a reduction to the complexity, pace, and productivity requirements, with no production quotas or work on an assembly line.

(Tr. 31.)

Here, the ALJ provided sufficient rationale for the persuasiveness of Dr. Baker's opinion. As reproduced above, the ALJ found that "while the record evidence supports some assessment of limitation," it did not support Dr. Baker's opinion that Ms. Hartzer required flexibility in breaks when experiencing increased symptoms. (Tr. 31.) In addressing supportability, the ALJ assessed that Dr. Baker did not have the opportunity to review the majority of evidence concerning Ms. Hartzer's mental health treatment because Ms. Hartzer submitted the evidence after the reconsideration stage of administrative review. (*Id.*) ("There is significant evidence since the date of these assessments with only a handful of exhibits considered at that time as compared to twenty-seven Section F exhibits.")). The medical evidence used by Dr. Baker in forming his opinion is "the cornerstone of supportability." *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023

13

WL 2623571, at *8 (S.D. Ohio Mar. 24, 2023). The ALJ further addressed the supportability of Dr. Baker's opinion by noting that, based on the same evidence Dr. Baker reviewed at the reconsideration level, Dr. Foulk—who reviewed the evidence at the initial stage of administrative review—did not find that Ms. Hartzer needed flexibility in her work breaks. (Tr. 31, 120.)

The ALJ also addressed the consistency of Dr. Baker's opinion. Although the ALJ did not explicitly use the word "consistency" in his decision, an ALJ need not use the exact words "supportability" or "consistency" to consider these factors in his credibility analysis. *See Belnap v. Comm'r of Soc. Sec.*, No. 1:22-CV-00202-CEH, 2022 WL 17669388, at *6 (N.D. Ohio Dec. 14, 2022); *Tyrone H.*, 2023 WL 2623571, at *8 ("All told, the ALJ—in substance if not in explicit language—assessed the supportability and consistency of the state agency psychologists' findings."). Here, the ALJ noted that Dr. Baker's findings were inconsistent with the record as a whole—and with the later-submitted evidence. The ALJ explained:

> Rather, mental health treatment records document improvement of claimant's mental health symptoms with treatment as well as greater activities of living. She reported issues getting along with others, but there [are] also notations of her being personable with all providers and reports going to the casino, and thus, in the proximity of others. As noted above, the claimant described improvement in mood with weight loss and participating in a considerable amount of activities of daily living. On evaluation, sources described the claimant as having improving mental status exam findings and movement in the right direction with process documented (14F).

(Tr. 31.)

Reading the decision as a whole and with common sense, the ALJ discussed these findings earlier in the decision. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ's evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion); *Buckhannon v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (recognizing courts "read the ALJ's decision as a whole and with common

sense"). For example, the ALJ noted that Dr. Desai's and Ms. Endicott's treatment notes indicated that Ms. Hartzer's mood and functioning improved with medication, and her mental status examinations were consistently normal. (Tr. 29; *see* Tr. 714, 919-20, 922, 925, 943, 1000, 1004, 1007-08, 1014, 1018, 1023, 1282.) This evidence supports the ALJ's conclusion that evidence submitted after the reconsideration level demonstrated that Ms. Hartzer's mental health symptoms improved and undermines Dr. Baker's opinion that Ms. Hartzer requires flexibility in scheduling work breaks when experiencing increased symptoms.

While the ALJ found that "[t]he overall record did not provide support for the state agency assessment that she required flexibility in breaks when experiencing increased symptoms as suggested by the reconsideration assessment and not included at the initial level," the ALJ noted that "[i]n taking this under consideration, however, [Ms. Hartzer] has been provided a reduction to the complexity, pace, and productivity requirements with no production quotas or work on an assembly line." (Tr. 31.) The ALJ further accounted for Ms. Hartzer's mental impairments, finding:

> In consideration of moderate deficits in interacting with others, and to further reduce stress in the work setting, the claimant has been restricted to no work with the general public or given work in a tandem co-worker environment. She should also only have occasional (as defined by the DOT) interactions with co-workers and supervisors. Finally, the claimant has been provided with limitations on decision-making as well as changes in the work-setting.

(Tr. 31-32.) Thus, the ALJ concluded that, "[i]n light of these expanded limitations, there is no support for any additional limitations and any different or additional limitations not adopted from the state agency assessments are unpersuasive." (*Id.*)

Accordingly, Ms. Hartzer's argument that "[t]he ALJ did nothing more than simply declare that Dr. Baker's opinion that Ms. Hartzer required occasional flexibility was not supported by the record" lacks merit. (ECF No. 6, PageID#1365.) Instead, the ALJ's decision reflects that she

15

adequately articulated the supportability and consistency of Dr. Baker's opinion and drew a logical bridge between the evidence and her conclusions in a manner that permits meaningful judicial review. Where substantial evidence supports the ALJ's RFC determination, this court must defer to that decision even where substantial evidence supports the opposite conclusion. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 533 (6th Cir. 2014). Accordingly, I recommend that the Court reject this assignment of error.

VI.   **RECOMMENDATION**

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: August 28, 2024    /s *Jennifer Dowdell Armstrong*
                          Jennifer Dowdell Armstrong
                          U.S. Magistrate Judge


VII.  **NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also

> receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).